UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Farnam Street Financial, Inc., *a Minnesota Corporation*,

       Plaintiff,

v.

ElektraFi Inc., *a Delaware Corporation*,

       Defendant.

File No. 25-cv-1054 (ECT/DTS)


**OPINION AND ORDER**

_____

Matthew Cavanaugh and Phillip J. Ashfield, Spencer Fane LLP, Minneapolis, MN, for Plaintiff Farnam Street Financial, Inc.

Jonathon A. Talcott, Buchalter LLP, Scottsdale, AZ, for Defendant ElektraFi Inc.

_____

This is a breach-of-contract case. Plaintiff Farnam Street Financial, Inc. leased equipment to Defendant ElektraFi Inc. in consideration for periodic payments. ElektraFi missed payments. That prompted Farnam Street to bring this case, invoking the court's diversity jurisdiction.[1]

---

[1] For diversity jurisdiction's purposes, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Farnam Street alleged that it "is a Minnesota corporation with its corporate headquarters and principal place of business" in Minnesota. Compl. [ECF No. 1] ¶ 1. ElektraFi denied this allegation, claiming it lacked sufficient knowledge or information on the subject. Answer [ECF No. 11] ¶ 1. However, the underlying contract documents and public records show that Farnam Street is a Minnesota citizen. *See Business Record Details: Farnam Street Financial, Inc.*, Off. of the Minn. Sec'y of State, https://mblsportal.sos.mn.gov/Business/SearchDetails?filingGuid=5339ebc2-b7d4-e011-a886-001ec94ffe7f (last visited June 4, 2026) (showing Farnam Street was incorporated in Minnesota and its "Principal Executive Office Address" is in Minnesota); ECF No. 22-1 at 2 (showing a Minnesota address for Farnam Street's office).

Farnam Street seeks summary judgment in its favor on liability and remedies in the amount of $1,915,056.33 plus an order that ElektraFi return the leased equipment. The result is a split decision. In Farnam Street's favor, ElektraFi's waiver argument, ElektraFi's contention that any default it committed was not "continuing" for purposes of the contract's Lease Agreement's remedies provision, ElektraFi's contention that the contract was a disguised security interest, and ElektraFi's mitigation argument all fail as a matter of law. In ElektraFi's favor, the briefs and factual record do not adequately address ElektraFi's prior-breach argument, making a trial necessary on that issue, and more is needed to resolve disputed legal and factual questions regarding what remedies are appropriate if ElektraFi is ultimately liable for its breach and default.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

Begin with just the basic facts described in a light most favorable to ElektraFi. Farnam Street is in the equipment-leasing business. *See* Compl. ¶ 5; Answer ¶ 5. ElektraFi

---

Nothing in the record suggests that Farnam Street's principal place of business is anywhere but Minnesota. ElektraFi is a citizen of Delaware and Colorado. Compl. ¶ 2; Answer ¶ 2.

"specializes in providing certain complex internet service provider equipment to remote communities where traditional cable-based internet services are not accessible." ECF No. 30 ¶ 3. Farnam Street and ElektraFi entered into Lease Agreement Number EL091321, which eventually incorporated Lease Schedule 005. ECF 22 ¶ 2; ECF No. 30 ¶ 4; *see* ECF No. 22-1 (Lease Agreement); ECF No. 22-2 (Lease Schedule 005). The Lease Agreement provided that ElektraFi would pay Farnam Street Monthly Lease Charges "in accordance with the Lease Schedule(s)." ECF No. 22-1 ¶ 3. Under Lease Schedule 005, Farnam Street agreed to lease equipment to ElektraFi for a term of thirty months, beginning August 1, 2024. ECF No. 22 ¶ 3; ECF No. 22-2 at 2 ("Monthly Lease Charge: Months 1 thru 5: $5,000.00; Month 6 and thereafter: $47,119.03[.]"). ElektraFi has not made payments under the Lease Agreement since January 2025. ECF No. 22 ¶ 5; ECF No. 30 ¶¶ 8, 35.

Farnam Street asserts a single claim—for breach of contract. Compl. ¶¶ 15–17. In its Complaint, Farnam Street sought damages in the amount of $1,450,107.11, "plus other amounts due and to become due under the Lease"; prejudgment interest; costs; expenses; and fees (including attorneys' fees). *Id.* at 5. By the time Farnam Street filed its summary-judgment motion, this request had grown to $1,915,056.33. ECF No. 21 at 4 (itemizing $746,042.94 in past-due Monthly Lease Charges, $98,954.71 in late charges, and $1,070,058.68 in Casualty Loss Value); *see* ECF No. 22 ¶ 6. Farnam Street also seeks return of the equipment. ECF No. 21 at 6.

The Lease Agreement included a Minnesota choice-of-law clause. ECF No. 22-1 ¶ 25. Under Minnesota law, a breach-of-contract claim requires "(1) a valid contract; (2) performance by the plaintiff of any conditions precedent; (3) a material breach of the

3

contract by the defendant; and (4) damages." *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 989 (D. Minn. 2006); *accord Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011).

As I understand the briefing, elements (1), (3), and (4) are in play. Element (3) is in play because ElektraFi disputes whether it committed a material breach; it argues its alleged breaches were justified. If ElektraFi materially breached the Lease Agreement, it challenges Farnam Street's requested relief. ElektraFi's challenges to Farnam Street's requested relief implicate element (1) because it argues the Lease Agreement's remedies provision is in certain respects unenforceable against it, and element (4) because it argues there are fact disputes regarding Farnam Street's entitlement to the remedies it seeks.

It makes sense to analyze the material-breach question first. Ordinarily, a failure to make required contractual payments is a material breach. *See, e.g.*, *Century BP, LLC v. LakePointe Holdings II, LLC*, No. 12-cv-2142 (RHK/JJG), 2014 WL 1281991, at *7 (D. Minn. Mar. 31, 2014). Here, Lease Schedule 005 required ElektraFi to make monthly payments for thirty months beginning August 1, 2024. ECF No. 22-2 at 2 ("Monthly Lease Charge: Months 1 thru 5: $5,000.00; Month 6 and thereafter: $47,119.03[.]"). ElektraFi did not make the required payment in January 2025, and it has not made payments since. ECF No. 22 ¶ 5; ECF No. 30 ¶¶ 8, 35. And under the Lease Agreement, ElektraFi's nonpayment of any amount the Lease Agreement required it to pay was an "Event of Default" if the "non-payment continue[d] for a period of ten (10) days from the date when due." ECF No. 22-1 ¶ 16. Without more, then, ElektraFi's failure to make required payments amounted to a material breach. ElektraFi says there is more. It identifies three

reasons why its failure to pay was not a material breach (or perhaps should be excused), and it argues that a trial is necessary to resolve these issues. Consider each of these in turn.

ElektraFi first contends that Farnam Street committed a prior breach (that is, prior to ElektraFi's nonpayment), and that Farnam Street's prior breach excused ElektraFi's nonpayment. Under Minnesota law, the "prior breach doctrine" holds that a party who first materially breaches a contract is typically precluded from claiming any amounts against the other party for that party's subsequent breach. *See Carlson Real Est. Co. v. Soltan*, 549 N.W.2d 376, 379 (Minn. Ct. App. 1996) ("Under general contract law, a party who first breaches a contract is usually precluded from successfully claiming against the other party."); *MTS Co. v. Taiga Corp.*, 365 N.W.2d 321, 327 (Minn. Ct. App. 1985) ("A rule in the law of contracts is that a party cannot raise to its advantage a breach of contract against another party when it has first breached the contract itself."); *Info-Bahn, Inc. v. Brown*, No. C1-00-1758, 2001 WL 506810, at *3 (Minn. Ct. App. May 15, 2001) ("It is undisputed that when a party to a contract breaches first, that initial breach constitutes legal justification for the other party's subsequent failure to perform."). Otherwise stated, "[t]he first breach serves as a defense against the subsequent breach." *Carlson*, 549 N.W.2d at 380. "Under the prior breach doctrine, the breach by the first party must be material and uncured to excuse the second party from performance." *Nutrisoya Foods, Inc. v. Sunrich LLC*, 626 F. Supp. 2d 985, 992 (D. Minn. 2009) (citing *Home Ins. Co. v. Nat'l Union Fire Ins. of Pittsburgh*, 658 N.W.2d 522, 534 (Minn. 2003)). A material breach is "[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and

affording it the right to sue for damages." *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. Ct. App. 2009) (alteration in original) (quoting *Material Breach*, *Black's Law Dictionary* (8th ed. 2004)). Whether a breach is material is a fact question. *Id.*

Though ElektraFi's prior-breach contention seems dubious, the evidence I may properly consider is insufficient to answer the prior-breach question as a matter of law. To address this issue, Farnam Street relies on evidence it submitted for the first time with its reply. Courts in this District ordinarily do not consider evidence filed for the first time with a reply brief unless the evidence was "necessary to address factual claims of the responding party that were not reasonably anticipated." *ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, No. 16-cv-4070 (SRN/HB), 2021 WL 1668013, at *9 (D. Minn. Apr. 28, 2021) (quoting D. Minn. LR 7.1(b)(2) advisory committee's note to 1999 amendment). This issue doesn't fit the exception. ElektraFi's prior-breach argument challenges fundamental aspects of Farnam Street's damages calculations that should have accompanied Farnam Street's opening brief. ECF No. 28 at 12 (noting that Farnam Street billed ElektraFi "for months in the amount of $51,006.26 when Schedule 5 clearly required monthly payments of $47,119.03"). There are good reasons to be skeptical of ElektraFi's argument. The Lease Agreement required ElektraFi to "reimburse [Farnam Street] for all license or registration fees, assessments, sales and use taxes, rental taxes, gross receipts taxes, personal property taxes and other taxes now or hereafter imposed." ECF No. 22-1 ¶ 4. ElektraFi's prior-breach argument largely ignores this obligation. ElektraFi does not explain whether these additional fees, assessments, and taxes might account for the difference between the $47,119.03 owed in Monthly Lease Charges and the $51,006.26

that Farnam Street billed.  Regardless, this is a fact question, and I don't have the facts necessary to answer it.[2]

Second, ElektraFi argues that Farnam Street waived its right to require ElektraFi's performance under the Lease Agreement.  ECF No. 28 at 10–11.  Understanding this argument requires additional background facts.  In December 2024 through February 2025, the parties negotiated a buy-out in which ElektraFi would purchase the equipment and the Lease Agreement would be terminated.  ECF No. 30 ¶ 29.  That period corresponded with the end of the "initial term" in Lease Schedule 005, as the purchase option activated on December 31, 2024.  *See* ECF No. 30-1 at 42; ECF No. 22-2 at 2 (making December 2024 the last month of the $5,000 Monthly Lease Charges, after which the Charges grew to $47,119.03).  "The negotiations arose because the Equipment, having been installed in rural locations, made removal and/or replacement . . . substantially more cost prohibitive relative to the Equipment's remaining present and fair market value."  ECF No. 30 ¶ 31. ElektraFi did not pay the January and February 2025 Monthly Lease Charges, as it "awaited

---

[2]      It is difficult to understand how these alleged overcharges might have amounted to material prior breaches for a separate reason the parties did not address.  It is true that a breach's materiality is usually a jury question.  *See Trooien v. Talon OP, L.P.*, Nos. A19-1541, A19-1654, 2020 WL 2840230, at *7 (Minn. Ct. App. June 1, 2020); *see also Juvland v. Plaisance*, 96 N.W.2d 537, 542 (Minn. 1959) (finding factual dispute over materiality of breach).  Here, however, the alleged overcharges were minor in comparison to what ElektraFi owed.  As far as this record shows, ElektraFi raised no contemporaneous dispute.  ElektraFi cites no authority finding a material prior breach based on a comparably small overcharge.  And although these kinds of overcharges occur every day in many settings, no reasonable person would think they excuse payment.  Consider a typical example: A commercial trash-hauling service overcharges a customer by a comparable amount.  If there is authority supporting the legal conclusion that the overcharge would excuse the customer from paying anything further under its contract (even as the trash hauler continued to provide its services), ElektraFi hasn't cited it, and I haven't found it.

agreed upon terms" for the "global resolution of the buy-out." *Id.* ¶¶ 34–35.  In February 2025, the buy-out negotiations broke down.  Farnam Street offered to sell the equipment to ElektraFi for $1,021,500.90.  *Id.* ¶ 36.  ElektraFi believed that price was too high, and that Farnam Street had raised it upon learning that ElektraFi might be receiving funding from a third party.  *Id.* ¶¶ 37, 39.  In email communications between the two companies' representatives in January and February 2025, Farnam Street repeatedly asked ElektraFi to pay the January and February rent.  *See* ECF No. 30-1 at 46 (January 21, 2025 statement that "[w]hile those conversations [about outside funding] are being had, it is still our [Farnam Street's] expectation that monthly rent is paid"); *id.* at 44 (February 7, 2025 demand of payment for January and February 2025 Monthly Lease Charges).

Waiver is "the intentional relinquishment of a known right," the "expression of an intention not to insist on what the law affords." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 367 (Minn. 2009) (citation modified).  It is ordinarily a factual question for a jury to decide. *Id.*; *see Engstrom v. Farmers & Bankers Life Ins. Co.*, 41 N.W.2d 422, 424 (Minn. 1950) ("When only one inference can be drawn from the facts, the question becomes one of law, but where different inferences may be drawn the question is one of fact for the jury.").  "Intent to waive may be inferred from conduct, but Minnesota courts will not find waiver absent a clear intention to do so, or facts from which waiver is necessarily implied." *Residential Funding Co. v. Terrace Mortg. Co.*, 725 F.3d 910, 918 (8th Cir. 2013) (citation omitted).  "When a party acts in a way that is inconsistent with the terms of a contract, a fact finder can reasonably conclude that a party waived those contractual provisions." *Valspar Refinish*, 764 N.W.2d at 367; *see Anderson v. Twin City*

*Rapid Transit Co.*, 84 N.W.2d 593, 602 (Minn. 1957) (finding that party's failure to insist upon arbitrating dispute for more than a year constituted waiver of arbitration provision). However, mere "cooperation between businesses to resolve . . . issues under a contract, without more, is insufficient to raise an issue of fact regarding waiver of express terms of an agreement." *Valspar Refinish*, 764 N.W.2d at 368.

No reasonable fact-finder could conclude that Farnam Street waived ElektraFi's obligation to perform under the contract. ElektraFi argues that Farnam Street "engaged in negotiations and conduct that waived and necessarily suspended strict performance, particularly because payment deadlines and amounts allegedly owed at that time awaited resolution and were unclear, negotiable, and disputed." ECF No. 28 at 10–11. But ElektraFi identifies no statement or other evidence from the negotiations suggesting that Farnam Street tolerated any default. *Id.* at 11. And the evidence points the other way. Farnam Street repeatedly insisted on strict performance, despite the parties' negotiations for the sale of the equipment. *See* ECF No. 30-1 at 44, 46. ElektraFi doesn't point to any other conduct indicating that Farnam Street waived the Monthly Lease Charges. As a matter of law, there was no waiver here.

Third, ElektraFi points out that a default alone was not enough to trigger the Lease Agreement's remedies provision. The default must have been "continuing." *See* ECF No. 22-1 ¶ 17. ElektraFi contends that a "continuing" breach means a "material" breach, and that Farnam Street has not established absence of factual dispute over whether ElektraFi materially breached the contract. ECF No. 28 at 10.

9

This contention is not convincing. The determination of whether a contract is ambiguous is a legal one, as is interpretation of an unambiguous contract. *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004) (applying Minnesota law). "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018) (citation modified). "In interpreting a contract, the language is to be given its plain and ordinary meaning." *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). The Lease Agreement does not define "continuing." *See* ECF No. 22-1. The word's plain and ordinary meaning is persisting, enduring, or lasting. *Continuing*, *The American Heritage Dictionary* (5th ed. 2012); *accord Continuing*, *Black's Law Dictionary* (12th ed. 2024). Here, there is no genuine dispute that ElektraFi failed to pay the January 2025 Monthly Lease Charges onward, and there is no reasonable question that a failure to pay for that length of time counts as "continuing" under that word's plain and ordinary meaning. As a matter of law, Farnam Street has established that ElektraFi's default was (and remains) continuing, meaning the remedies provision kicks in.

The next question is whether there are trial-worthy disputes regarding the remedies Farnam Street seeks, including the $1,915,056.33 Farnam Street requests in its motion. On this question, it makes sense to start with the Lease Agreement's remedies provision. It is worth quoting at length:

> Should any Event of Default occur and be continuing, [Farnam Street] may, in order to protect its interests and reasonably expected profits, with or without notice or demand upon [ElektraFi], pursue and enforce, alternatively, successively

and/or concurrently, any one or more of the following remedies:

(1) recover from [ElektraFi] all accrued and unpaid Lease Charges and other amounts due and owing on the date of the default;

(2) recover from [ElektraFi] from time to time all Lease Charges and other amounts as and when becoming due hereunder;

(3) accelerate, cause to become immediately due and recover the present value of all Lease Charges and other amounts due and/or likely to become due hereunder from the date of the default to the end of the lease term using a discount rate of three (3%) percent;

(4) cause to become immediately due and payable and recover from ElektraFi the Casualty Loss Value of the Equipment;

(5) terminate any or all of [ElektraFi's] rights, but not its obligations, associated with the lease of Equipment under this Lease Agreement;

(6) retake (by [Farnam Street], independent contractor, or by requiring [ElektraFi] to assemble and surrender the Equipment in accordance with the provisions of Section 7 hereinabove) possession of the Equipment without terminating the Lease Schedule or the Lease Agreement free from claims by [ElektraFi] which claims are hereby expressly waived by [ElektraFi];

(7) require [ElektraFi] to deliver the Equipment to a location designated by [Farnam Street];

(8) proceed by court action to enforce performance by [ElektraFi] of its obligations associated with any Lease Schedule and/or this Lease Agreement; and/or

(9) pursue any other remedy [Farnam Street] may otherwise have, at law, equity or under any statute, and recover damages and expenses (including attorneys' fees) incurred by [Farnam Street] by reason of the Event of Default.

ECF No. 22-1 ¶ 17.  To recap, Farnam Street says it is entitled to summary judgment in the amount of $1,915,056.33.  ECF No. 21 at 4.  This amount includes $746,042.94 in what

Farnam Street says are past-due Monthly Lease Charges, $98,954.71 in late charges, and $1,070,058.68 to account for the leased equipment's "Casualty Loss Value." *Id.*

ElektraFi challenges the validity and enforceability of the remedies provision on two grounds. It first argues that the Lease Agreement is a disguised security interest, and that Minnesota statutes govern the available recovery, meaning some of the remedies Farnam Street seeks under the Lease Agreement's remedies provision are not available. ECF No. 28 at 15–16. "Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case." Minn. Stat. § 336.1-203(a); *see James Talcott, Inc. v. Franklin Nat'l Bank of Minneapolis*, 194 N.W.2d 775, 779 (Minn. 1972) ("It is the clear policy of Art. 9 of the code to look to the substance, rather than to the form, of an agreement to determine whether or not it is a security agreement."). Under Minnesota's version of the Uniform Commercial Code,

> A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease *and is not subject to termination by the lessee*, and:
> (1) the original term of the lease is equal to or greater than the remaining economic life of the goods;
> (2) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
> (3) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
> (4) the lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Minn. Stat. § 336.1-203(b) (emphasis added).

Here, the Lease Agreement is not a security interest because ElektraFi had the right to terminate. ECF No. 22-1 ¶ 1 ("The term of this Lease Agreement as to all Equipment designated on any particular Lease Schedule *may be terminated without cause at the end of the Initial Term* or any year thereafter by either party mailing written notice of its termination to the other party not less than one-hundred twenty (120) days prior to such termination date." (emphasis added)). Regarding this issue, Judge Susan Richard Nelson analyzed a nearly identical contract, and her explanation is persuasive. *See Prospect ECHN, Inc. v. Winthrop Res. Corp.*, 569 F. Supp. 3d 935, 946–54 (D. Minn. 2021). She found that identical language created the lessee's right to terminate. *Id.* at 949–50. ElektraFi's contention that it lacked the right to terminate is contradicted by the plain text of the contract. *See* ECF No. 28 at 16. Because there is no genuine factual dispute about this issue, it's unnecessary to analyze anything further under the statute.

Second, ElektraFi argues that Farnam Street's remedies request, though permitted under the Lease Agreement, is unconscionable. ECF No. 28 at 19–20. Recall that Farnam Street seeks $746,042.94 in past-due Monthly Lease Charges, $98,954.71 in late charges, $1,070,058.68 in Casualty Loss Value, and return of the leased equipment. ECF No. 21 at 4. Farnam Street argues that the Lease Agreement's remedies provision authorizes its damages request, that its request is not unconscionable, and that the Casualty Loss Value calculation amounts to an enforceable liquidated-damages clause. ECF No. 31 at 6–14.

"When a plaintiff seeks to recover damages for an alleged breach of contract he is limited to damages flowing only from such breach except in exceptional cases where the defendant's breach of contract constitutes or is accompanied by an independent tort."

*Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 379 (Minn. Ct. App. 1984). "Under Minnesota law, a liquidated-damages clause is enforceable when 1) 'the fixed amount is a reasonable forecast of just compensation for the harm caused by the breach,' and 2) 'the harm is incapable or very difficult of accurate estimation.'" *Eaton Hydraulics*, 361 F.3d at 472 (quoting *Bellboy Seafood Corp. v. Nathanson*, 410 N.W.2d 349, 352 (Minn. Ct. App. 1987)). "[W]here the actual damages resulting from a breach of the contract cannot be ascertained or measured by the ordinary rules, a provision for liquidated damages not manifestly disproportionate to the actual damages will be sustained." *Gorco Constr. Co. v. Stein*, 99 N.W.2d 69, 75 (Minn. 1959).

In *Eaton Hydraulics*, the Eighth Circuit found a nearly identical liquidated-damages provision to be enforceable "because of the speculative nature of the value of the [equipment] at termination of the lease schedules." 361 F.3d at 472. However, the court there did not reach the question of double recovery because the lower court "specifically ordered that Winthrop may collect the greater of the two, but not both." *Id.* at 473; *see Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, No. 01-cv-649 (DSD/JMM), 2002 WL 35453165, at *8 (D. Minn. Apr. 23, 2002) ("Winthrop's damages claim will not result in an award that is manifestly disproportionate to the actual loss, since Winthrop seeks only the greater of the present value or casualty loss, not both, and since Winthrop must credit Eaton with any funds or value derived from the repossessed or returned equipment. Winthrop has a duty to mitigate damages." (citation and footnote omitted)).

Here, a trier of fact could reasonably conclude that Farnam Street seeks a recovery that substantially exceeds its damages flowing from the breach. Two contractual

14

provisions are at issue: the liquidated damages provision, which calculates the Casualty Loss Value, ECF No. 22-1 ¶ 12, and the remedies provision, under which Farnam Street could choose "any one or more of the following remedies" should ElektraFi be in continuing default, *id.* ¶ 17.  Farnam Street seeks to enforce both: calculation of Casualty Loss Value, including the Monthly Lease Charges, and an additional payment of the Monthly Lease Charges.  And ElektraFi must return the equipment.  *Eaton Hydraulics*— the main case Farnam Street cites in this section of its brief—undermines Farnam Street's position, because there the plaintiff did not seek the full range of damages authorized by the contract, and Judge David S. Doty limited the relief because the plaintiff had a duty to mitigate damages.  *See* 2002 WL 35453165, at *8.  Farnam Street has not shown that the cumulative remedies it seeks are allowable under Minnesota law.

ElektraFi mounts two factual challenges to Farnam Street's damages calculations. ElektraFi first argues that Farnam Street's damages calculations lack foundation.  ECF No. 28 at 12–15.  "Liability for breach of contract requires proof that damages resulted from or were caused by the breach."  *Border State Bank of Greenbush v. Bagley Livestock Exch., Inc.*, 690 N.W.2d 326, 336 (Minn. Ct. App. 2004).  With its opening brief, Farnam Street filed a declaration identifying the remedies it seeks, but the declaration provides no explanation of how the witness arrived at these numbers.  *See* ECF No. 22 ¶ 6.  Without that explanation, the declaration is not sufficient to meet Farnam Street's summary-judgment burden and lacks foundation essential to establishing the numbers' admissibility at trial.  Fed. R. Civ. P. 56(a), (c)(4); Fed. R. Evid. 602.  Farnam Street submitted additional information with its reply brief to cover this gap.  But as noted earlier, courts in this District

15

ordinarily do not consider evidence filed for the first time with a reply brief unless the evidence was "necessary to address factual claims of the responding party that were not reasonably anticipated." *ResCap Liquidating Tr.*, 2021 WL 1668013, at *9. We don't have anything like that here.

Second, ElektraFi argues there is a genuine factual dispute about whether Farnam Street fulfilled its duty to mitigate damages. ECF No. 28 at 17–18. ElektraFi has not shown that this issue is trial-worthy. To the extent this argument is grounded in statutes governing security interests, *see id.* at 18 (citing Minn. Stat. §§ 336.9-601-628, 336.9-607, 336.9-610, 336.9-615), ElektraFi relies on inapplicable law. The duty to mitigate is also grounded in Minnesota common law. *See Sustainable 9, LLC v. Coleman*, No. A24-1548, 2025 WL 2389072, at *5 (Minn. Ct. App. Aug. 18, 2025); *Deutz-Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990) ("It is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages."). The breaching party has a duty to show that damages could have been mitigated by reasonable diligence. *Winthrop Res. Corp. v. B. Dalton Booksellers, Inc.*, No. C1-01-1060, 2002 WL 76374, at *4 (Minn. Ct. App. Jan. 22, 2002) (citing *Lanesboro Produce & Hatchery Co. v. Forthun*, 16 N.W.2d 326, 328 (Minn. 1944)). At least one court has found that Minnesota law does not require a lessor to repossess goods to satisfy that duty. *Id.* at *5 (citing *Shasteen v. Mid-Continent Refrigerator Co.*, 517 S.W.2d 437, 440 (Tex. Civ. App. 1974)).

ElektraFi alleges only that Farnam Street could have made a "commercially reasonable disposition of the Equipment and application of such proceeds." ECF No. 28

16

at 18.  Farnam Street counters that it could not do that, since ElektraFi had not returned the equipment, and Farnam Street had no obligation to repossess the equipment.  ECF No. 31 at 12 n.14.  The record is sparse regarding the nature of the equipment—what "installation" means, how feasible it is to uninstall, whether third-party Internet providers could make commercial use of the equipment in its installed state.  On this thin record, ElektraFi hasn't shown that Farnam Street might have, with reasonable diligence, re-leased or transferred the equipment after it had been installed.  Put another way, ElektraFi hasn't shown how a trier of fact might reasonably conclude that Farnam Street failed to mitigate its damages.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiff's Motion for Summary Judgment [ECF No. 19] is **GRANTED IN PART** and **DENIED IN PART** as described above.

Dated:  June 5, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court